SCHOTT, Judge.
This is an appeal by plaintiffs from a judgment based on a unanimous jury verdict dismissing their suit for damages arising out of an alleged automobile accident. The issue is whether, upon a review of the record in accordance with Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), we may determine that the jury’s finding is not clearly wrong.
Plaintiffs’ principal argument is that defendant’s testimony was so incredible that there must have been an accident and it must have occurred the way the two plaintiffs described it. However, the jury unanimously decided that there was no accident thereby categorically rejecting the testimony of the plaintiffs.
On the morning of April 7, 1981 plaintiff, Goodwin, had exited 1-10 West at Carroll-ton Avenue in his company’s vehicle with his co-worker, plaintiff, Brady, as his passenger. Goodwin testified he stopped at a stop sign at Carrollton and started into Carrollton when he was struck from the rear by a car driven by defendant, David Terribile; he backed out of Carrollton two or three feet, got out to inspect the car and found a dent on one of his car’s bumper guards; when he discovered that Brady was hurt he decided to call the police. Brady testified that just after they stopped for the stop sign he leaned down to the floor of the car to get a document when he felt a jolt from behind. Brady was taken to the hospital in an ambulance while Goodwin remained on the scene to wait for the police. Following the investigation Goodwin drove to the hospital for treatment.
According to Terribile he too had exited from I — 10, came to a stop at Carrollton, and started into Carrollton when he observed Goodwin’s car moving slowly in the center lane of Carrollton; as he was passing the car Goodwin asked Terribile to stop as there seemed to be a problem, whereupon both drivers backed out of Carrollton and onto the exit; at this point Goodwin accused him of rear ending him. Terribile testified there were chunks of concrete on the roadway which may have caused Goodwin’s problems. Steven Grannen testified he was a friend of Terribile and was following him in his own car; they got to the stop sign at Carrollton together, he entered Car-rollton, and he observed Goodwin’s car *395 moving slowly as though having mechanical trouble. He went on his way but returned about fifteen minutes later to find the two cars behind the stop sign in the exit. He also testified that he saw chunks of concrete in the roadway.
The only other fact witness was the policeman, Claudell Logan, who investigated the accident. He had no independent recollection of the accident and testified from his report that Terribile told him he ran into the rear of Goodwin’s car. Also his report made no mention of concrete or debris in the roadway.
The case was submitted to the jury on written interrogatories the first of which was “Did the automobile of David Terribile strike the rear of the Goodwin/Brady automobile?” When the jury answered “No” they signified that they simply did not believe Goodwin and Brady. As plaintiffs, they had the burden of proving there was an accident and they failed to produce credible witness to carry this burden.
In this court plaintiffs argue that the physical evidence and Logan’s testimony make the jury’s verdict clearly wrong but this argument is unpersuasive. For instance, they say when Logan arrived the front of Terribile’s car was up against the rear of Goodwin’s. Everyone, including Goodwin, acknowledged that his car was moved back after the accident and before Logan got there. Next, defendants make much over a dent on the left rear bumper guard of Goodwin’s car, but Goodwin admitted he had driven this car for three years from thirty to fifty thousand miles so that the jury could easily have concluded that this dent was there before the accident. Furthermore, this dent is hardly visible in the photographs of Goodwin’s car so they may have caused the jury considerable doubt that there was any impact at all especially considering that there was no damage to the front of Terribile’s car whatsoever. In addition, plaintiffs argue there must have been an accident since both of them, especially Brady, were injured and required immediate medical attention. But since the jury did not believe this accident occurred they must have believed that plaintiffs’ injuries occurred at another time and place.
As to Logan, plaintiffs’ argument that he was the only disinterested witness whose testimony had to be accepted by the jury and now by this court overlooks the weakness of his testimony. As already noted he had no recollection of the accident. He thought the automobiles had not been moved, yet all parties admit Goodwin’s was. Logan’s entry in his report that Ter-ribile admitted rear ending Goodwin lost its significance when Goodwin testified that Logan told him at the scene that Terribile’s version of the accident was nowhere near his (Goodwin’s) version. From this the jury must have concluded that Logan did not record what Terribile really told him. Furthermore, Logan admitted that Terri-bile wanted to tell him a lot more, but he wouldn’t listen and didn’t record his entire explanation. Finally, Terribile said Logan talked to Goodwin privately but when he questioned Terribile, Goodwin was present, interrupting and injecting himself into the conversation so that Terribile finally told Logan to write down whatever he wanted. We cannot say the jury was clearly wrong in rejecting Logan’s testimony.
Much of plaintiffs’ arguments are designed to discredit Terribile and his witness. Plaintiffs ask: Why would he have agreed, at Goodwin’s request, to back up a considerable distance from Carrollton Avenue back to the exit ramp? Why would he go with Goodwin to call the police if there was no accident? Where were the chunks of concrete Terribile and his witness testified about? Perhaps gullibility or naivete explains why he backed up in the first place and perhaps he wanted the police in order to protect himself from Goodwin’s false accusation. As to the concrete, the jury must have found Logan’s failure to report this as merely consistent with the other shortcomings of his report. More importantly, however, we cannot overturn this unanimous jury verdict that Terribile did not rear end Goodwin on some weak *396 points in Terribile’s testimony. Once the jury rejected Goodwin’s and Brady’s testimony as untrue it made little difference that Terribile’s version was doubtful in some respects.
The only other assignment of error by plaintiffs other than the facts as discussed above is the trial court’s admitting testimony by Terribile that he contested the traffic ticket issued him by Logan and that the charge was dismissed. While such evidence is ordinarily inadmissible, under the circumstances here the trial court did not err. While plaintiffs’ counsel was cross examining Terribile he asked him, following some questions about Logan's investigation, “What do you then claim happened?” Terribile answered that the officer gave him a ticket, counsel asked why, and Terribile said because the officer had to give a ticket to somebody. This testimony came out so suddenly that no one could prevent it. Once the cat was out of the bag that Terribile got the ticket he was entitled to show it was eventually dismissed. Additionally, defendants’ counsel cleared up any misconception the jury may have gotten that the dismissal resulted from a trial in another court when Terribile testified that the ticket was dismissed after he retained counsel and he could not say why it was dismissed. Finally, we reject the suggestion by plaintiffs’ counsel that Terribile’s initial testimony about the ticket was contrived and designed by him to get in the testimony about the ticket’s dismissal.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.